UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN W. KYSER, <br><br> Plaintiff, <br> v. <br><br> CONNECTICUT SOUTHERN RAILROAD and GENNESEE & WYOMING, INC., <br><br> Defendants. | 3:13 - CV - 86 (CSH) <br><br> JULY 3, 2013 |

**RULING ON MOTION FOR LEAVE TO FILE THIRD PARTY COMPLAINT**

**HAIGHT, Senior District Judge:**

**I.     BACKGROUND**

Plaintiff John W. Kyser brings this action to recover damages for injuries he sustained while working as a trainman for defendants Connecticut Southern Railroad ("CSO") and Gennesee & Wyoming, Inc. ("Gennesee"), t/a Gennesee Western Railroad, (collectively, "Defendants") on November 18, 2011. On that date, at approximately 2:30 a.m., Plaintiff engaged in the removal of a handbrake from a tanker car of a train located at a chemical plant in Wallingford, Connecticut. Doc. #1, ¶ 10.  Plaintiff alleges that, as a result of Defendants' negligence, the handbrake "malfunctioned and would not properly release," causing Plaintiff to sustain "serious, painful and permanent personal injuries."[1] *Id.*  He seeks recovery for said injuries under the Federal Employer's

---

[1] Plaintiff prays for "a sum in excess of . . . $150,000.000," based on his personal injuries, which he alleges include injuries "to his body, . . its bones, cells, tissues, nerves, muscles and functions," "injuries to his spine, ribs, chest, back and torso," and "rib fracture, [and] nerve damage."  Doc. #1, ¶ 12.  Plaintiff further alleges that he "has been diagnosed with reflex sympathetic dystrophy syndrome," has undergone "a series of epidural injections and will be having a spinal cord stimulator surgically inserted." *Id.*

1

Liability Act, 45 U.S.C. § 51, *et seq.*, and the Federal Safety Appliances Act, 49 U.S.C. § 20301, *et seq.*, which, in conjunction, impose absolute and mandatory duties upon railroad carriers to keep certain appliances and equipment on railroad cars in the prescribed condition.[2]

Defendants contend that Plaintiff's damages and injuries were sustained due to "his own carelessness and negligence in that he continued to attempt to loosen the handbrake which he claims was excessively stiff and difficult to release and did not stop performing the task and seek assistance." Doc. #12 ("Answer"), p. 2 ("First Affirmative Defense"). They also assert that defendant Gennesee & Wyoming, Inc. is a separate and distinct corporation from CSO, so that Gennesee has no potential liability in this action. Doc. #10, p. 3. Furthermore, Defendants contend that the incident of November 18, 2011 was not the cause, in whole or part, of Plaintiff's claimed injuries. *Id. See also* Doc. #12, p. 2 ("Third Affirmative Defense") ("If the plaintiff sustained the damages and injuries as alleged then same were caused in whole or part by the acts of a third party occurring on November 22, 2011."); Doc. #15-1 (Proposed "Third Party Complaint against Infra-Metals Co."), p. 3, ¶ 8 ("The injuries the Plaintiff claims to have sustained on November 18, 2011 were aggravated or wholly caused by the incident of November 22, 2011.").

II.  **PENDING MOTION**

Pending before the Court is the motion of defendant CSO for leave to file a third party complaint against Infra-Metals Company ("Infra-Metals") on the ground of indemnity. Doc. #15.

---

[2] "In the case of a railroad employee engaged in interstate commerce, the right of action [for injuries sustained due to improperly maintained equipment] is found in FELA." 11 Am. Jur. Trials 397 (Westlaw update May 2013). "The Safety Appliance Acts . . . are considered substantively, if not in form, as amendments to the Federal Employers' Liability Act . . . [so that] an employee injured by virtue of a violation of the Safety Appliance Acts . . . may bring suit under FELA, charging violation of [that] statute[] as the ground of recovery." *Id.*

CSO bases its motion on the underlying premise that Plaintiff's injuries, if any, actually stem from an incident that occurred on November 22, 2011 – four days after Plaintiff's removal of the allegedly defective handbrake on November 18, 2011. CSO's theory is that the negligence of Infra-Metals caused the November 22, 2011 incident and Infra-Metals must indemnify CSO for any damages relating to that incident.

Specifically, CSO asserts that Plaintiff "completed his shift on November 18, 2011 and completed each of his scheduled shifts in the days following." *Id.*, p. 1. Then, on November 22, 2011, he "was involved in an incident in which he jumped off a moving train car just before it collided with construction equipment that was fouling the tracks." *Id.* That "construction equipment was being operated by an employee of Infra-Metals." *Id.*, p. 2. On November 26, 2011, Plaintiff reported both the November 18 and 22 incidents to CSO for the first time. *Id.*

CSO represents that Infra-Metals had exclusive control over the condition which gave rise to the November 22, 2011 incident, the operation of a "man lift" on the tracks. *Id.* Therefore, it was the "negligence of Infra-Metals [that] was the direct and immediate cause of the alleged accident and resulting injuries of the Plaintiff" on November 22, 2011. *Id.* In sum, "[i]f any negligence other than the Plaintiff's negligence caused the November 22, 2011 incident, it was the active negligence of Infra-Metals that was the cause." *Id.*

Furthermore, CSO asserts that "at all relevant times, CSO and Infra-Metals were parties to a Trackage Agreement," under which Infra-Metals was required to indemnify CSO for "all liabilities, claims, costs and reasonable attorney fees resulting from any and all property damage, personal injuries or deaths, including employees and agents of Railroad [CSO] and Industry [Infra-Metals] . . . caused by or arising out of [Infra-Metals]'s failure to perform any of its obligations under

this Agreement, [including] the presence, maintenance, use or removal of the Sidetrack" upon which the November 22, 2011 incident occurred. *Id. See also* Doc. #15-1 ("Trackage Agreement"), p. 17, ¶ 17 ("Indemnity"). In sum, CSO asserts that because "some or all of the injuries the Plaintiff claims in this lawsuit were caused by the incident of November 22, 2011," that "incident was the result of Infra-Metals' negligence," and Infra-Metals agreed to indemnify CSO for all such claims arising from the presence, maintenance and/or use of the Sidetrack, CSO should be permitted to serve a summons and complaint upon Infra-Metals pursuant to Rule 14(a)(1), Fed. R. Civ. P. *See* Doc. #15-1, p. 2-6 (two-count "Third Party Complaint," asserting common law and contractual indemnification claims).

Plaintiff has not responded to CSO's motion to implead Infra-Metals. The prescribed response period of twenty-one days following filing of the motion has expired and Plaintiff has proffered no objection. *See* D. Conn. L. Civ. R. 7(a)(1) ("Unless otherwise ordered by the Court, all memoranda in opposition to any motion shall be filed within twenty-one (21) days of the filing of the motion . . .").

### III.   DISCUSSION

Under Federal Rule of Civil Procedure 14(a)(1), "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." By design, Rule 14(a) "promote[s] judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim." *Hines v. Citibank, N.A.*, 96 CV 2565(RJW), 1999 WL 440616, *2 (S.D.N.Y. June 28, 1999) (citation omitted). Nonetheless,

"the right to implead third parties is not automatic," *Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y.1987); and the decision whether to permit a defendant to implead a third party rests within the sound discretion of the trial court, *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984) (*per curiam*).

### A.     Subject Matter Jurisdiction

Before examining the substance of the third party claims, it is incumbent on the Court to determine whether there is adequate subject matter jurisdiction over the third party claims.[3] An impleader claim, as every other claim in federal court, must be assessed individually to confirm the existence of a proper basis for federal subject matter jurisdiction. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 66 n. 1 (1996) ("Once federal subject matter jurisdiction is established over the underlying case between [plaintiff] and [defendant], the jurisdictional propriety of *each additional claim* is to be assessed individually.") (emphasis added). "[W]hether a court has subject matter jurisdiction over a third-party . . . , is distinct from an assessment of the propriety and merits of an impleader action." *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir.2000).

In the present action, there is "federal question" subject matter jurisdiction over the Plaintiff's main action in that Plaintiff includes claims arising under federal statutes, namely the FELA, 45 U.S.C. § 51, *et seq.*, and Federal Safety Appliances Act, 49 U.S.C. § 20301, *et seq. See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

With respect to the proposed third party claims, however, CSO alleges only common law

---

[3] The Court notes that CSO failed to address subject matter jurisdiction in either the motion for leave to file a third party complaint or the proposed Third Party Complaint itself.

claims, "common law indemnification" and "contractual indemnification," which arise under state law. On its face, the Third Party Complaint presents no facts or circumstances which potentially give rise to a federal claim under the Constitution or federal statute. In the absence of "federal question" jurisdiction, there generally must be subject matter jurisdiction based on "diversity of citizenship" for the claims to proceed. The party bringing the action must establish that the plaintiff and defendant are "citizens of different States" and "the matter in controversy exceeds the sum or value of $75,000." *See* 28 U.S.C. § 1332(a)(1).

With respect to the proposed impleader, CSO has failed to allege sufficient facts to establish diversity of citizenship of the parties. Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." CSO has merely alleged that "CSO was a railroad corporation existing under the laws of the State of Delaware" and "at all relevant times, the Third-Party Defendant, Infra-Metals, was a corporation existing under the laws of the State of Georgia." Doc. #15-1, ¶¶ 1-2. CSO fails to specify whether CSO and Infra-Metals were incorporated in more than one state – *i.e.*, in states other than Delaware and Georgia, respectively. Also, CSO fails to provide the location of the principal places of business of CSO and Infra-Metals. Based on the deficient factual allegations of the Third Party Complaint, the Court cannot determine whether "diversity" subject matter jurisdiction exists over the third party claims.

As to jurisdictional amount, Plaintiff claims damages in excess of $150,000 in his Complaint, Doc. #1, p. 4; and CSO's Third Party Complaint requests "indemnification against any judgment which may be rendered against CSO," Doc. #15-1, p. 6. By implication, the jurisdictional amount of $75,000 may be met, although not explicitly delineated, in the Third Party Complaint. CSO has,

however, failed to pray explicitly for an amount exceeding $75,000.

In the absence of "federal question" or established "diversity" subject matter jurisdiction over a third party complaint, the Court next turns to examine whether supplemental jurisdiction exists under 28 U.S.C. § 1367.[4] That statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form *part of the same case or controversy* under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (emphasis added). "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.* Consistent with the Supreme Court's holding in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), claims over which supplemental jurisdiction is asserted and the original action must arise from a "common nucleus of operative fact."

As set forth *supra,* Plaintiff's underlying action includes federal claims under FELA, 45 U.S.C. § 51, *et seq.*, and the Federal Safety Appliances Act, 49 U.S.C. § 20301, *et seq.* If the claims in the proposed Third Party Complaint arise from the same nucleus of operative fact as Plaintiff's Complaint, the Court may exercise supplemental jurisdiction. *See, e.g.*, *Coale v. Metro-North R.R. Co.*, No. 3:08–CV–01307 (CSH), 2009 WL 212063, at * 1-2 (D.Conn. Jan. 29, 2009) (recognizing supplemental jurisdiction with respect to interstate railroad carrier's third-party common law indemnity claim in relation to plaintiff railroad worker's personal injury action under the FELA); *McMillan v. Equifax Credit Information Services, Inc.*, 153 F.Supp.2d 129, 131

---

[4] *See, e.g., RBS Citizens, N.A. v. Portugal*, No. 3:10 CV 1306, 2011 WL 4101475, at *5 (D.Conn. Sept. 14, 2011) ("Since diversity is lacking, the Court has no independent basis for jurisdiction of these [third party] claims beyond its authority to consider them pursuant to supplemental jurisdiction.") (internal quotations and citation omitted).

(D.Conn. 2001) (where plaintiff borrower alleged bank violated Fair Credit Reporting Act and bank alleged such violations were result of son's fraudulent use of plaintiff's personal identifying information,"the Court conclude[d] that the alleged acts of the son [we]re sufficiently related to the original case to provide supplemental jurisdiction over the [bank's] third-party claims").

The Second Circuit has held that "disputes are part of the same case or controversy within § 1367 when they derive from a common nucleus of operative fact." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir.2006) (internal quotations omitted). "In determining whether two disputes arise from a common nucleus of operative fact, [the Second Circuit has] traditionally asked whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." 464 F.3d at 335 (internal quotations and punctuation omitted).

In the case in suit, it is clear that the disputes are not part of the same case or controversy. The main claim in the Complaint and the proposed impleader action arise from two distinct sets of facts. The main claim is directed to an incident that took place on November 18, 2011, involving Plaintiff's removal of an allegedly defective handbrake. Plaintiff asserts that Defendants negligently maintained said handbrake. The impleader action is addressed to a track-related accident that occurred on November 22, 2011. CSO claims that Infra-Metals negligently operated a "man lift" on the Sidetrack ("Track 1952), causing Plaintiff to jump out of a moving train before it collided with the lift that was "fouling Track 1952." Doc. #15-1, ¶ 7. The impleader action seeks indemnification for injuries Plaintiff sustained on November 22, 2011. The only fact in common

8

in both actions is that Plaintiff was allegedly injured on both occasions.[5] The actions do not overlap or derive from a common nucleus of operative fact.

Although supplemental jurisdiction may extend to third party claims based on indemnification, the indemnification must relate to damages sought in the main action. Here, the impleader relates solely to injuries stemming from a separate, later occurrence. Consequently, the Court does not have supplemental jurisdiction over the Third Party Complaint. *See, e.g.*, *Azevedo v. Club Getaway, Inc.*, No. 3:06–cv–1222 (VLB), 2008 WL 350479, at * 2 (D.Conn. Feb. 7, 2008) (declining to exercise supplemental jurisdiction "[a]s there is no common nucleus of operative facts, nor any overlap between the facts necessary to prove the claims in the complaint and the third party complaint"). [6]

Furthermore, even if CSO were able to plead additional facts necessary to establish diversity

---

[5] Although CSO acknowledges in the Third Party Complaint that Plaintiff's claims stem from the November 18, 2011 incident, Doc. #15-1, ¶¶ 5-6, CSO plainly seeks recovery from Infra-Metals for Plaintiff's damages that were "aggravated or wholly caused by the incident of November 22, 2011," *id.*, ¶¶ 7-8.

[6] In *Azevedo*, 2008 WL 350479, plaintiff filed a negligence action for personal injuries she allegedly sustained while riding on a boat owned or operated by defendants. The defendants then impleaded their insurers, asserting claims of negligence, bad faith, breach of fiduciary duty, breach of contract, and willful, wanton and reckless conduct in the creation of an insurance policy for defendants. Despite an express watercraft exclusion in the insurance policy at issue, defendants claimed that the insurers "may be liable for all or a portion of the plaintiff's claims." 2008 WL 350479, at *1. In holding that there was no supplemental jurisdiction over the third party claims, Judge Bryant explained:

> The claims in the complaint and third party complaint are completely separate and distinct. There is no overlap. They involve different allegations of facts involving different actors and time periods. The evidence necessary to prove the claims would be found in different documents and offered through different witnesses.

*Id.*, at *2. In the absence of the requisite "common nucleus of operative facts," the court lacked subject matter jurisdiction and the third party complaint was necessarily dismissed. *Id.*

jurisdiction or the Court employed an exceedingly broad brush to sweep the third party claims within the factual nucleus of the main Complaint, thereby accepting supplemental jurisdiction, the proposed third party claims could still not proceed. Federal Rule 14(a) of Civil Procedure only permits a defendant to file a third party complaint against a party that "may be liable to it for all or part of the claim against it." As set forth below, Rule 14(a) does not permit the proposed third party claims.

      **B.**      <u>**Standard for Impleader - Rule 14(a), Fed. R. Civ. P.**</u>

It is well-settled that a third-party action, also known as an impleader action, "must be dependent on, or derivative of, the main . . . claim." *Bank Of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir.2000). The Second Circuit has explained that a defending party may assert a third party claim when either (1) the third party's liability is "dependent upon the outcome of the main claim" or (2) the third party is "potentially secondarily liable as a contributor to the defendant." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29. 31 (2d Cir. 1984). *See also Siemens Westinghouse Power Corp. v. Dick Corp*, 299 F. Supp. 2d 242, 248 (S.D. N.Y. 2004) ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. In other words, the outcome of the third-party claim must be contingent on the outcome of the main claim[.]") (internal quotations and citations omitted); 6 Charles Alan Wright & Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1446, at 377 (3d ed.) ("A third-party claim may be asserted under Rule 14(a)(1) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party.").

Generally, the traditional grounds for a third-party action are indemnification, contribution,

or subrogation. *Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 120 (E.D.N.Y. 2005). *See also* Federal Practice and Procedure § 1446 ("The secondary or derivative liability notion is central," such that impleader is often successfully used "when the basis of the third-party claim is indemnity."). "A third-party complaint is a narrow device and cannot be used to bring in other matters that may have some relationship to the case." *Doucette*, 233 F.R.D. at 120.

In the case at bar, CSO seeks to implead Infra-Metals on the ground that, under common law and pursuant to an explicit "Tracking Agreement," Infra-Metals is bound to indemnify CSO for Plaintiff's injuries, which CSO contends were actually sustained as the result of the November 22, 2011 track incident. In general, as set forth *supra*, indemnity is a valid and recognized basis upon which to implead a third party. However, CSO's present motion is problematic in that the indemnity sought relates to damages from an incident outside of the Complaint. Therefore, the outcome of the third party claim is not contingent upon the outcome of Plaintiff's main claims; and contingency is a crucial element for impleader under Rule 14(a), Fed. R. Civ. P.

Put simply,, CSO seeks to implead Infra-Metals for injuries stemming from an incident which is *not the basis of Plaintiff's claims*. Plaintiff seeks damages only for injuries resulting from his attempted removal of a faulty handbrake on November 18, 2011. Nowhere in Plaintiff's Complaint does he reference or describe the November 22, 2011 track-related incident during which he allegedly " jumped off a moving train car just before it collided with construction equipment that was fouling the tracks." Doc. #15, p. 1. Any injuries stemming from the track-related incident do not form the basis for his present claim. In sum, the Complaint does not address the same transaction or occurrence which gives rise to the claims in the proposed Third Party Complaint.

Furthermore, CSO does not allege facts in the proffered Third Party Complaint to suggest

that Infra-Metals is potentially secondarily liable as a contributor with respect to the damages resulting from the handbrake incident. CSO does not assert that Infra-Metals had any responsibility for or involvement with the allegedly faulty handbrake on November 18, 2011. Rather, CSO's sole argument to implead Infra-Metals is that Infra-Metals is liable for injuries sustained by Plaintiff in a *separate incident* involving the Sidetrack. Because Plaintiff seeks recovery only for alleged injuries arising from removal of the handbrake, the indemnity agreement between CSO and Infra-Metals does not come into play.

Rule 14(a) dictates that a defending party may only serve a third party complaint on a nonparty if that nonparty "is or may be liable to [the defendant] for all or part of the claim against it" – *not* for claims *outside* of the complaint. *See, e.g.*, *Tyson v. Cayton*, No. 88 Civ. 8398(JFK), 1990 WL 209381, at *3 (S.D.N.Y. Dec.10,1990) (throwing out third party tort and antitrust claims of boxing manager and management companies against promoter Don King where their outcome was not contingent on resolution of main claim by "Iron Mike" Tyson for breach of contract against managers); *Doucette*, 233 F.R.D. at 120-21 (dismissing third party complaint as improper under Rule 14(a) where third party claims of Vibe Records for, *inter alia*, tortious interference with contractual relations, civil conspiracy and copyright infringement against other recording and entertainment companies were neither "derivative of or dependent on the liability asserted" in plaintiff singer's main claims for breach of contract against Vibe).

To make matters clear, the Court does not mean to say that the actual cause of Plaintiff's alleged injuries in the present action is not relevant or important. If the jury, as finder of fact, determines that Plaintiff's alleged injuries actually stem in whole or in part from incidents outside the handbrake removal on November 18, 2011 – including, but not limited to, the track-related

incident on November 22, 2011 – CSO will not be held liable for such injuries *in this action*. Plaintiff must prove that the damages he seeks actually resulted from the handbrake incident, which forms the basis of his claims. Only injuries arising from the claims within his Complaint may comprise the potential bases for an award of damages in this action. Damages stemming from other occurrences, if any, will be offset.[7]

The proposed Third Party Complaint is improper under Rule 14(a). The Court will deny CSO's motion to implead Infra-Metals because it is neither dependent upon nor derivative of the main claim in suit.

### IV.   CONCLUSION

For all of the foregoing reasons, the Court DENIES CSO's "Motion for Leave to File Third-Party Complaint" (Doc. #15) against Infra-Metals. Plaintiff has failed to establish subject matter jurisdiction and the Court lacks supplemental jurisdiction over the proposed third party claims. Furthermore, the third party claims may not, in any event, proceed under Federal Rule of Civil Procedure 14(a) in that they are not dependent upon the outcome of Plaintiff's claims.

It is SO ORDERED.

Dated: New Haven, Connecticut
July 3, 2013

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] Furthermore, the pleadings are now closed in this action. The deadline for filing motions to amend the Complaint, May 1, 2013, has expired. Doc. #11. Therefore, absent a motion for leave to amend, demonstrating either "the opposing party's written consent" or reasons why "justice so requires" amendment, the Complaint shall remain as filed. *See* Fed. R. Civ. P. 15(a)(2).